## GAZAN vs. ROYCE & COMPANY et al.

1. When an attachment was sought on the ground of a fraudulent transfer of property by a debtor to defeat creditors, under §3297 of the code, and the record on its face showed that the petition was not supported by any affidavit or testimony of like character as that of an affidavit, the attachment was fatally defective; and on the trial of a claim case arising under the levy of the attachment, the levy should have been dismissed and the attachment rejected from evidence, on motion of the claimant. Nor was this defect cured by the fact that the judge said, on the trial of the claim case, that he had evidence before him (apparently oral evidence) which justified his issuing the attachment, the attachment being issued by the judge without any judgment being entered for that purpose.

(a) A claimant of property levied on under an attachment cannot move to quash the attachment, but the proper motion is to dismiss the levy, or to reject it from evidence when offered against him. Therefore where the claimant moved to dismiss the attachment, which was refused, and he failed to file exceptions pendente lite and have them recorded within proper time, this did not prevent him from moving to dismiss the levy and objecting to the introduction of the attachment on the trial of the claim case.

(b) The case of Hines & Hobbs vs. Kimball et al., 47 Ga. 587, discussed, and the statement that the claimant could move to dismiss the attachment prior to the trial of the main issue in the case, disapproved.

2. That an attachment issued in a partnership name, without stating the names of the individuals composing the firm, was not such a defect as would authorize the dismissal of the levy thereunder or the rejection of the attachment, when offered in evidence on the trial of a claim case growing out of the levy.

3. Where an affidavit to obtain an attachment was made by an attorney at law, who stated that, to the best of his knowledge and belief, the defendant was indebted in a certain amount to the firm of which he was attorney, and he further swore to the ground of the attachment, setting it forth in the terms of the statute, this was a positive statement as to the ground of the attachment, and was sufficient.

4. The evidence warranted the verdict finding the property subject.

5. There was no merit in the exceptions taken to the admission of testimony and to the charge of the court.

May 9, 1887.

Attachment. Laws. Claims. *Res Adjudicata.* Practice in Superior Court. Partnership. Attorney and Client. Before Judge HANSELL. Brooks Superior Court. May Term, 1886.

A number of attachments were issued against Nathan Gazan and were levied on certain property, the first levy being on December 4, 1883. Simon Gazan interposed claims, and on the trial two were selected as types of all, and by agreement the questions at issue were tried under them. The first was that of *Royce & Co. vs. Gazan.* This attachment was sued out under §3297 of the code. The petition alleged, as the ground of attachment, that the defendant had made a pretended sale of his entire stock of goods and all his real estate to his brother, Simon, for the purpose of avoiding the payment of "said debts" (having stated their claim). It alleged also that the plaintiffs, being non-residents, were unable to make affidavit that these allegations were absolutely true, but "submit such evidence as is under their control to support their petition." No affidavit was attached and no order passed granting the attachment, but the judge of the superior court issued the writ. The second-class of attachments was represented by that of *Loomis & Hart vs. Gazan.* The affidavit to obtain the attachment was as follows:

"GEORGIA, Brooks County.

"Before me, the subscriber, a justice of the peace in and for said county, personally comes D. W. Rountree, attorney at law for

v 78-33

Loomis & Hart, and on oath saith that, to the best of his knowledge and belief, Nathan Gazan is indebted to Loomis & Hart in the sum of seven hundred and fifty-eight dollars, and he further swears that the said Nathan Gazan is about to remove without the limits of the county of Brooks.                    D. W. ROUNTREE.

"Sworn to and subscribed before me this 4th day of December, 1883.                         F. L. JONES, J. P."

In 1884, the claimant made a written motion to dismiss all of the attachments of both classes on substantially the same grounds as those stated hereafter when the second motion to dismiss was made. This was overruled. Exceptions *pendente lite* were prepared, but were lost and not filed or recorded during the term. The case was carried to the Supreme Court (see 76 *Ga.* 79). In 1886, the judgment overruling the motion, which also had been lost, was established and ordered to be recorded. An order then was taken establishing the exceptions *pendente lite* and ordering them to be recorded.

When the case came on for trial, the claimant again moved to dismiss the attachments of both classes on numerous grounds. As to the first class, the grounds were, in substance, that the petition was verified neither by affidavit nor by other sufficient proof; because the allegations of the petition were insufficient; and because the attorney of plaintiffs signed the bond, though he did not swear to the petitions. As to the second class, the grounds were, in substance, because the affidavits were made by the attorney of the plaintiffs, and the ground of attachment was not sworn to positively; because he did not swear that he was plaintiffs' attorney; because the names of the individual partners were not set out; and because the bonds were given by the attorney for plaintiffs' firm, without stating the names of the partners. (The bonds were amended so as to state the names of the partners.)

The presiding judge overruled this motion on two grounds: (1) Because the grounds taken were not good in law; and (2) because the matter was *res adjudicata* under the former ruling.

When offered in evidence, the claimant again objected to the attachments upon the same grounds and moved to dismiss the levies thereunder. This was overruled. [In the brief of evidence, it is stated that the court held that the petitions under §3297 of the code were supported by testimony, and that testimony was before the court when the attachments were issued, which was in place of and as strong as an affidavit.]

The evidence for the plaintiffs need not be set out in detail. It tended to show, among other things, the purchase of unusually large amounts of goods by the defendant on representations of solvency and small indebtedness; a quick transfer of all these and the real estate of defendant to his brother to pay an indebtedness alleged to have been made months previously and aggregating $9,502.11, created in the space of a few weeks and most of it within a few days; that the claimant made no return of such indebtedness for taxation, but his tax returns, both before and after this indebtedness was claimed to have been created, showed from about $3,000 to $3,500, consisting almost entirely of a stock of goods in Savannah; that after the transfer, some of the stock was at once sold at low prices and the rest was being shipped to Savannah when levied on; and that defendant remained in possession of a house and lot included in the transfer for a considerable time, and in connection with his wife negotiated its sale.

The claimant introduced no evidence. The jury found the property subject. The claimant moved for a new trial on thirty-six grounds, those material to be stated being as follows:

(1)–(3) Because the verdict was contrary to law and the evidence.

(4) Because the court overruled the motion to dismiss each of the attachments.

(5) Because the court overruled the objection of the claimant to the admission of the attachments in evidence and the motion to dismiss the levies under them.

(6), (16) Because the court erred in admitting to the jury as evidence the answers of S. M. Grayson to interrogatories numbered 1, 2, 3, 4, 5 and 6, relating to the transactions of Nathan Gazan with Armstrong, Cator & Co., and the statements made by him to said firm, they not being parties to attachments herein; said testimony being illegal, irrelevant, secondary and tending to mislead the jury. [The testimony of this witness showed that defendant had purchased goods from Armstrong, Cator & Co. in August, 1883, and in so doing, had made a written statement as to his financial condition, showing property amounting to $12,500, and liabilities $3,000, and that they shipped goods to him, but subsequently stopped them *in transitu.*]

(7) Because the court erred in admitting to the jury, against the objection of claimant, the answers of William Baer to the fourth interrogatory, and to the paper attached thereto, marked exhibit "A," relating to a statement made by him for Nathan Gazan to the National Shoe and Leather Exchange; said testimony being illegal, irrelevant, secondary and tending to mislead the jury. [Baer testified that he was the clerk and book-keeper of defendant; that he wrote the business letters, sometimes writing them himself in the ordinary course of business as a clerk would, and they were signed "Nathan Gazan, W. B.," and sometimes they were dictated by Gazan. In answer to the fourth interrogatory, he stated that the paper attached as exhibit "A" was received from the National Shoe and Leather Exchange; that it came by due course of mail, and he wrote out the answers to the questions propounded; that no one dictated them; and that he took them from the books laid before him and signed it. In another answer, the witness stated that Gazan was nearly blind and could not see to write himself, and that witness had charge of the books and knew as much about them as Gazan did. The paper attached as exhibit "A" was a series of questions and answers as to Gazan's financial

condition, and represented him as in good standing, having assets worth about $10,000 above his liabilities. It was signed "N. Gazan, W. B.," and was sent between May and December, when the transfer was made.]

(8) Because the court erred in admitting to the jury as evidence, against claimant's objections, the statements made to the National Shoe and Leather Company, being attached to and part of answer of Wm. Baer; same being made, as claimant insists, by Wm. Baer, and not by Nathan Gazan, and not shown to have been authorized or ratified by Nathan Gazan, and there being no proof that any of Nathan Gazan's creditors had ever seen or acted upon said statement, nor any proof connecting claimant with the same in any way; said testimony being illegal, irrelevant and tending to bias, prejudice, confuse and mislead the jury against claimant. [See note to preceding ground.]

(9) Because the court erred in admitting, over claimant's objection, the letter purporting to have been written to J. Whitehill & Co., signed "Nathan Gazan, by W. B."; claimant insisting, without proof of the handwriting of Nathan Gazan or W. B., or who "W. B." was, or that W. B. was authorized to write said letter, or that Nathan Gazan ever ratified the writing of the same; nor does it in any way connect Simon Gazan with the matters therein mentioned; said testimony being illegal, irrelevant and tending to bias, prejudice and confuse the jury against claimant. [See note to 7th ground above. The letter was dated Sept. 6, 1883. It stated that the parties addressed had doubtless heard of the panic in Baltimore, after defendant left there, growing out of his purchases; that several parties had stopped their goods, and thanking this firm for allowing their goods to come forward, and speaking of the parties who became alarmed at his purchases, as "small in principal (?) and capital." Whitehill testified that his firm forwarded the goods and never received any payment for them; and in answer to the question

whether he had received any letter from Gazan in reference to the purchase and a request to attach it, he did so.]

(10) Because the court erred in admitting, over claimant's objection, the letter purporting to have been written by "Nathan Gazan, per W. B.," to Townsend, Whitely & Company, claimant insisting, without any proof, that Nathan Gazan authorized or ratified the same, or any proof who "W. B." was, or proof of his handwriting, or that he wrote the letter in fact, or connecting claimant with same; said testimony being illegal, irrelevant and tending to bias, confuse and mislead jury against claimant. [See note to 7th ground above. The letter appears in the record as signed "N. Gazan." It is dated August 28, 1883, seeks to explain the extent of defendant's purchases, and complains of want of confidence on the part of some of those who sold to him, and claims that his purchases were legitimate. One of the firm to whom it was written testified that "we received letter from Gazan of date August 28, 1883," which he attached to his answers.]

(12), (13) Because the court admitted the testimony of various witnesses named, over claimant's objection. [The testimony of these witnesses tended to show large purchases on credit, made by defendant in August, before the transfer to his brother early in December; that he sought to make other purchases, which were refused on account of the excessive amount of goods which he desired shipped; that he bought goods of a variety of kinds, and that considerable amounts of goods were ordered, but were stopped *in transitu* by the shippers. The objection was, that this testimony was irrelevant, not connected with claimant, and calculated to bias and prejudice the jury as to him. He stated that the original statement had been sent to defendant, but that he attached a copy. Notice and *subpœna duces tecum* were served to cause the production of the original, but it was not produced.]

(14) Because the court admitted in evidence the tax returns of claimant, over his objection.

(15) Because the court admitted in evidence a deed of assignment made by Simon Gazan, the claimant, as an insolvent, for the benefit of creditors, on June 3, 1885.— The objection was that it was irrelevant.

(18) Because the court charged the jury as follows: " But if any material badge of fraud be proved to your satisfaction, then it constitutes a *'prima facie'* case of fraud, and if such material badge of fraud be proven, and be left unexplained by evidence, then you are authorized to infer the existence of a fraudulent intent, and to set the sale or other transaction aside."

(19) Because the court charged as follows: " Among the badges of fraud recognized by law, is the inability of the party purchasing to pay the purchase money. ' The sale of one's entire property suddenly and for a grossly inadequate price.' Close relationship between the parties to a sale or transaction, covering the vendor's entire property, especially if the seller be. insolvent or greatly embarrassed at the time, is a circumstance which you may consider in determining the character of the sale by Nathan Gazan to Simon Gazan."

(20) Because the court charged " that the continuous possession of property, real or personal, by seller after sale was also *'prima facie'* proof of a fraudulent purpose."

(21) Because court erred in his charge, in charging as a badge of fraud: " Any unusual preparation or sudden changes in one's method of doing business, contrary to the customary habits of business, occurring shortly before such sale of one's entire property, by one in embarrassed circumstances, constitutes a badge of fraud, and if proven to your satisfaction, and not explained by satisfactory evidence, may authorize you to infer the existence of a fraudulent purpose."

(22) Because the court, after charging the jury as to badges of fraud, charged further: " Inquire if any or all these badges of fraud exist or not; I cannot say if they do or do not, or intimate any opinion, but it is for you to ex-

amine the evidence and decide whether they do or not. If the evidence shows that they exist, or any of them, inquire if there is any evidence showing that Simon Gazan was a *bona fide* purchaser for a valuable consideration, without notice of any intent to defraud or delay creditors, or grounds of reasonable suspicion," etc. Said charge, as claimant insists, indicated to the jury that if any badge of fraud was proved, it showed a fraudulent intent on the part of Nathan Gazan, instead of leaving it to the jury to say whether it did or not.

(23) Because the charge of the court, taken as a whole, is indefinite, and tended to confuse the jury on the issue of fraud or no fraud in the sale.

(24) Because the court declined to charge the jury, as requested by claimant's counsel, in writing the following: " The burden of proof being on plaintiffs in attachment to show the goods and other property set out in Simon Gazan's claim-affidavits were subject to the levies of the various attachments, it is incumbent on plaintiffs in attachment to identify by evidence as the property of Nathan Gazan, before the jury can find said goods and other property subject."

(25)–(29) Because the evidence failed to support the verdict in various particulars specified.

(30) Because the court admitted testimony of C. H. Remington that Nathan Gazan kept posted about his bus· iness, did his own correspondence, etc.—The objection was that it was irrelevant and illegal.

(31) Because the court admitted evidence of S. J. Epstein to the effect that, some time in the winter of .1883, Nathan Gazan was in possession of the property and that he bought coffee from him at prices named.—Same objection as just noted.

(32) Because the court admitted testimony of J. T. Thrasher as to the house sold by him, and to the effect that defendant continued to live there from some time in 1883 until 1885, and then he and his wife sold it to the

witness. [The house was included in the transfer under which the claimant claimed.]

· (33) Because the court admitted the answer of I. S. Seaman to the question, "How long would it take him to dispose of it?" [The witness testified that defendant's stock of saddles and harness before the transfer to his brother was much larger than he usually carried, and it would take two or three years to sell such a stock; and that the witness was a saddle and harness maker in the same town and had been so for forty-five years.]

(34) Because the court admitted testimony of Robert Henderson as to the stock of goods of defendant. [The witness testified that he had been in the habit of going into defendant's store and was there in the fall of 1883, and that he thought it was a large stock of goods—the largest he ever saw in there.]

(35) Because the court allowed W. A. McNeill to testify as to kind of furniture in Mrs. Gazan's house in Quitman. [McNeill, who was the sheriff, testified that he made search and could find no property on which to levy, except that on which the attachments were levied, and that he had been in the defendant's parlor, and the furniture therein was worth $125 or $135.]

(36) Because the court admitted testimony of Hobson as to the price of goods bought from Simon Gazan. [The witness testified that, at the time of the transfer, he bought goods from claimant at prices less than they could have been bought for in New York; that it cost something to ship them, and it was advantageous to sell instead of shipping; that he considered it a bargain, and hence bought them.]

The motion was overruled, and the claimant excepted.

MacIntyre & MacIntyre; J. G. McCall; W. B. Bennett; J. G. Wade; Garrard & Meldrim, for plaintiff in error.

D. W. ROUNTREE; E. P. S. DENMARK; W. M. HAMMOND; J. H. LUMPKIN, for defendants.

HALL, Justice.

This writ of error covers two classes of cases. The first class is represented by the case of *Gazan vs. Royce & Co.;* the second class by *Gazan vs. Loomis & Hart.* The attachment in favor of Royce & Co. was issued under section 3297 of the code. As appears upon the face of the record from the lower court, the petition in this case was not supported by any affidavit, nor was it supported by testimony of like character as that of an affidavit: Under the principles announced in the case of *Loeb vs. Smith Bros. & Co. et al.* at this term, the attachment was fatally defective. The petition says that the petitioner could not swear that the facts set forth in the affidavit in relation to the fraudulent transfer of this property were absolutely true, but asked permission to submit such evidence as was under his control. True, at a subsequent stage of the proceedings, the judge said that he had evidence before him (as we take it, oral evidence) which justified his issuing this attachment. If such evidence existed, it depended solely on the judge's recollection. No record was ever made of the fact that it existed. And we have just held (*Loeb vs. Smith Bros. & Co. et al.*) that that, or something equivalent to it, is indispensable to authorize the issuing of such an attachment. *Ante,* 504.

If there were nothing more in this case than that, it would be decisive of the question arising upon that attachment, and all others of the same class included in this record. But in 1884, the claimant made a motion in writing to set aside this attachment, and all others belonging to the same class, for the reasons just mentioned. Upon the hearing of that motion (which was placed upon the motion docket), it was overruled by the court, and no exception was taken to the decision overruling it. It was stated that exceptions *pendente lite* were filed to the mo-

tion, but they did not appear upon the record. If they were filed to that decision, they were never placed upon the minutes of the court where they should have gone. The case was afterwards brought to this court by the plaintiffs in attachment, who were cast on the first trial; and here the decision was reversed. These exceptions were not brought up, nor was error assigned upon them in this court, and nothing more was heard of them until this claim was on its final trial in 1886; and then an order was taken to enter the decision made in 1884 upon the minutes of the court *nunc pro tunc*. That order was granted. On the trial of the main issue, the claimant moved to exclude the attachment as evidence, upon the ground formerly stated, and to dismiss the lien created by the attachment. This motion was overruled, and the claimant excepted. It was overruled on two grounds, the latter of which need only be mentioned (the former having been already disposed of), viz. that there was a former judgment unappealed from and unreversed, which was conclusive as to the matter.

We do not think the ruling proper. We are aware that in the case of *Hines & Hobbs vs. Kimball et al.*, 47 *Ga.* 587, the court below did entertain a motion to dismiss attachments prior to the trial of the main issue in the case, for defects apparent on the face of the attachment, and that the court did order the attachments to be dismissed. That was excepted to, and brought to this court. This court, however, reversed that judgment. In delivering the opinion of the court, Judge McCay stated that it was admissible to make the motion in that way; but later on, similar questions arose in several cases before this court, and in all except one, upon claims filed to the levying of executions, a different rule was laid down.

In *Bosworth vs. Clark*, 62 *Ga.* 286, this court ruled that if the claimant would except to the sufficiency of the execution, the proper motion on his part was to dismiss the levy, or to object to the execution as illegal evidence

in the case, and not a motion to quash the execution; that his only concern therewith was that the execution should not be used against the property claimed. This ruling was repeated, almost in terms, in the case of *Morton, Bliss & Co. vs. Gahona*, 70 *Ga.* 569, where Chief Justice Jackson said, in delivering the opinion of the court, that it did not lie in the mouth of the claimant to move to quash the execution. It only concerned him that the execution should not touch his property, as previously decided in *Bosworth vs. Clark.* In *Krutina vs. Culpepper*, October term, 1885 (75 *Ga.* 602), we held that where an attachment issued, based upon affidavit not positively swearing to the ground upon which it is issued, and was levied, a judgment in attachment obtained, a *fi. fa.* issued and levied, and a claim interposed, the claimant could move to dismiss the levy on the ground that the attachment affidavit was defective; that such a motion was not objectionable on the ground that it was not made within three years from the rendition of the judgment; that the claimant could not move in reference to the judgment until after the filing of the claim; and that a motion by a claimant to dismiss a levy is not a motion to set aside a judgment, which must be made within three years from the rendition of such judgment. For these reasons we think that this attachment should have been repelled when it was offered in evidence to subject the property claimed, and that the levy should have been dismissed; and as to the class of cases of which this is a representative, the judgment of the court below must be reversed.

In the other class of cases, represented by *Gazan vs. Loomis & Hart*, the attachment issued under section 3264 of the code. The objection to that was twofold: (1) That it was issued in the partnership name, and that the names of the individuals composing the firm were not set out in the attachment; and (2) that the ground of the attachment was not positively sworn to. The affidavit was made by an attorney at law, who stated that, to

the best of his knowledge and belief, the party was indebted in a certain amount to the firm of which he was the attorney; and he further swears to the ground of the attachment, setting it forth in the terms of the statute.

These are no longer open questions in this court. The first was disposed of in the case of *DeLeon vs. Heller, Hirsch & Co.,* October term, 1886, (77 *Ga.* 740). As to the objection on the second ground mentioned, that is covered by the case of *The Chronicle and Constitutionalist vs. Rowland,* 72 *Ga.* 195. The property claimed was found subject, as it should have been. The evidence upon which it was condemned was strong enough to justify the verdict of the jury; indeed, the weight of the testimony was with the finding of the jury.

Various exceptions were taken to the admission of testimony and the charge of the court, none of which we think are good. Judgment therefore in this latter case, *Gazan vs. Loomis & Hart,* together with the other cases belonging to that class, is affirmed.